**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------
SHIVA STEIN,                                         :
                                                     :
       Plaintiff,                           : Civil Action No. 22-cv-9696
                                                     :
v.                                                   : **COMPLAINT FOR VIOLATIONS OF**
                                                     : **SECTIONS 14(a) AND 20(a) OF THE**
ADVANCED EMISSIONS SOLUTIONS,                        : **SECURITIES EXCHANGE ACT OF**
INC., L. SPENCER WELLS, CAROL                        : **1934**
EICHER, GILBERT LI, J. TAYLOR                        :
SIMONTON,                                            : **JURY TRIAL DEMANDED**
                                                     :
       Defendants.                          :
------------------------------------------------------ :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against ADES Corporation, ("ADES or the "Company") the members ADES's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between ADES and Arq Limited ("Arq").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on November 4, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby (i) ADES will merge with and into Elbert Merger Sub 1, Inc. ("Merger Sub"), with the Company continuing as the surviving entity of Elbert Holdings, Inc. ("New ADES") (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 19, 2022 (the "Merger Agreement"), each ADES stockholder will receive either (i) 1.11 shares of New ADES common stock plus $0.52 in cash, or (ii) 1.22 shares of New ADES common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 46.1% of Arq common stock outstanding.

3.      As discussed below, Defendants have asked ADES's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Ducera Securities LLC ("Ducera") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ADES's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the NASDAQ Stock Exchange, headquartered in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of ADES stock and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant L. Spencer Wells has served as a member of the Board since 2014 and is the Chairman of the Board.

11. Individual Defendant Carol Eicher has served as a member of the Board since 2019.

12. Individual Defendant Gilbert Li has served as a member of the Board since 2016.

13. Individual Defendant J. Taylor Simonton has served as a member of the Board since 2014.

14. Defendant ADES is a Delaware corporation and maintains its principal offices at 8051 E. Maplewood Avenue, Ste. 210, Greenwood Village, Colorado 80111.  The Company's stock trades on the NASDAQ Global Select Market under the symbol "ADES."

15. The defendants identified in paragraphs 10-13 are collectively referred to as the "Individual Defendants" or the "Board."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

17. ADES, together with its subsidiaries, provides environmental technologies and specialty chemicals in the United States. It operates through two segments, Refined Coal and Advanced Purification Technologies. The Company offers CyClean technology, a pre-combustion coal treatment process to enhance combustion, as well as to reduce emissions of nitrogen oxide and mercury from coals burned in cyclone boilers; and M-45 and M-45-PC technologies, which are pre-combustion coal treatment technologies used to control emissions from circulating fluidized bed boilers and pulverized coal boilers. It also provides mercury and other air contaminants controls; and activated carbon products, such as powdered activated carbon and granular activated carbon, as well as owns an associated lignite mine that supplies the raw material for the powdered activated carbon plant. The Company's products are used in removal of heavy metal pollutants; treatment of drinking and waste waters; industrial acid gas and odor removal; automotive gasoline emission control; soil and ground water remediation; and food and beverage process and product purifications. It serves customers in the coal-fired power generation and industrial boiler processes. ADES was founded in 1996 and is headquartered in Greenwood Village, Colorado.

18. On August 19, 2022, the Company announced the Proposed Transaction:

> GREENWOOD VILLAGE, Colo., Aug. 19, 2022 (GLOBE NEWSWIRE) -- Advanced Emissions Solutions, Inc. (NASDAQ: ADES) (the "Company" or "ADES"), a leader in emissions control

solutions for coal-fired power generation, industrial and municipal water purification markets, today announced that it has entered into a definitive merger agreement with Arq Limited ("Arq"), pursuant to which Arq and ADES will combine their respective businesses. ADES shareholders may elect to receive up to an aggregate of $10.0 million of cash proceeds in the merger (at a price of $0.52 per share) and will retain at least 47.4% of the outstanding shares of the combined company and could increase up to 49.5% based upon 100% equity elections by ADES Investors. Concurrent with the merger, there will be a committed equity placement of $20.0 million from current Arq investors and members of Arq management.

Arq developed and owns a novel manufacturing process for producing patent-protected carbon products from remediating coal waste sites. The merger creates a North American based, integrated environmental technology company with access to diverse growth markets and a competitively advantaged position supported by patent-protected intellectual property ("IP") and products. Access to Arq's unique carbon feedstock will allow ADES to produce higher value activated carbon ("AC") at the company's Red River plant.

**Merger Rationale and Transaction Highlights**

- **Adjacent market growth opportunities**: Arq's technology and unique feedstock provide significant growth opportunities into high-growth granular activated carbon ("GAC") markets as well as large, adjacent markets including, but not limited to, additives to be utilized within the Carbon Black, Asphalt and Marine Fuel markets. The combined company will seek to leverage Arq's existing strategic partnerships with Peabody, Vitol, Hafnia and Mitsubishi.

- **Sustainable competitive advantage**: The merger provides secured access to unique, waste-derived feedstock, which can be used to produce higher performance and environmentally beneficial AC products that, when combined with a vertically integrated supply chain, provides a distinct competitive advantage in the North American AC market. In addition, the utilization of waste-derived feedstock results in lower manufacturing emissions and promotes the reclamation of property for future use. Further, with Arq's feedstock, the combined company's vertically integrated supply chain will enable highly efficient production and distribution of an expanded portfolio of both GAC and powdered activated carbon ("PAC") products.

- **Profitability enhancement**: The combination of ADES and Arq provides entry into broader, higher performance and higher value AC markets by leveraging ADES' existing organizational

5

infrastructure, large scale manufacturing capabilities, established distribution network, world-class research, technical support, market-leading sales channels and customer base, while integrating Arq's unique patent-protected and environmentally sustainable feedstock. The merger also provides for the optimization of the Red River plant to produce additional GAC made from Arq's feedstock, thereby allowing entrance into growing and diverse markets, as well as improving the plant's economics.

- **Attractive financial profile**: Combined company projected to generate annual revenue of $196 million and annual EBITDA of $61 million by 2026, with potential to expand growth through additional financed capital raises.

"The announcement of our proposed merger with Arq Limited represents the culmination of our strategic review process and months of diligent work to identify, evaluate and pursue opportunities to increase value for our shareholders," said Greg Marken, Chief Executive Officer, President and Treasurer of ADES. "We are thrilled to join forces with Arq and pursue the exciting opportunity the merger presents to grow our businesses and to expand and enhance our collective operations and product portfolio. Arq has developed and patented new and innovative technologies with the potential to revolutionize the performance of carbon-based materials, which also provide a unique solution to reduce the need for the extraction of virgin hydrocarbons. We are excited to explore this new frontier with Arq's leadership, which will allow for a transition to better position us to pursue higher margin markets. Arq has an exceptional leadership team, that brings passion and creativity into the organization. I look forward to working with Julian McIntyre and the Arq team as we collaboratively forge the future for ADES and our shareholders."

Julian McIntyre, Founder and Chief Executive Officer of Arq, added, "Today's announcement combines the resources of two leading environmental technology companies with proven, patented technology solutions that reduce the environmental footprint while creating a more sustainable future for our customers. The combined teams of ADES and Arq accelerates the Company's presence in the structurally under-served North American activated carbon market and solidifies the foundation to compete effectively in growing adjacent markets such as Carbon Black, Asphalt, Marine Fuel, and other specialty applications on a global scale. Arq's feedstock, produced from our Corbin, Kentucky plant, will facilitate ADES's expansion and penetration of the North American GAC markets, which typically command higher prices and improved margins over traditional PAC markets. ADES' preeminent manufacturing assets,

outstanding commercial sales team and world class R&D capabilities are the perfect complements to produce specialty AC products on a larger scale for growing markets and applications. We are very excited to combine our respective businesses and look forward to our future success."

**About Arq Limited**

Arq is a privately owned, environmental technology company founded in 2015 that has developed a novel process for producing specialty carbon products from coal mining waste. Arq has the technology and large-scale manufacturing facilities to produce a micro-fine hydrocarbon powder, Arq powder™, that can be used as a feedstock to produce activated carbon. Arq powder™ can also be used as a blending additive for both the Carbon Black and Asphalt markets. When blended with residual fuel oil for marine transportation or utility fuels for energy generation, Arq powder™ provides both a lower cost and an improved environmental footprint. Arq's products are patent protected with a family of over 70 patents and applications.

**Transaction Terms**

- Pursuant to the transaction agreement, ADES will issue 19,279,235 shares of its common stock to existing Arq equity holders, in exchange for all of their equity interests.

- ADES shareholders will have the option to receive 1.11 shares of the combined company and a one-time cash payment of $0.52 per share or 1.22 shares of stock in the combined company.

- Pursuant to the transaction agreement, a binding commitment for a $10.0 million term debt facility from a lending party was obtained. The lending party will also obtain penny warrants to purchase 1% of the pro forma equity of the combined company.

- At the time of the completion of the merger, the Company will complete a private investment in public equity ("PIPE") from current Arq shareholders for an additional capital investment of $20.0 million based at a price of either (i) $4.67 per share (the "Fixed PIPE Price") or (ii) if the 30 day volume weighted average price of the Company's common stock for the 30 days ending on the third business day prior to the date of the ADES shareholders' meeting to approve the transaction (the "ADES VWAP") is greater than approximately $5.83 per share or less than approximately $3.51 per share, at a price equal to the ADES VWAP.

- Immediately after completion of the merger and giving effect to the PIPE (assuming the PIPE shares are purchased at the Fixed PIPE Price) and dilutive impacts of the warrants, legacy ADES shareholders will own 49.5%, assuming a 100% stock election and that the PIPE shares are purchased at the Fixed PIPE Price. Legacy Arq equity holders and PIPE investors will own approximately 49.5% with the remaining 1% owned by the lending party.

- ADES will continue to operate as a public company, with its shares listed on the Nasdaq Global Market under its existing ticker symbol ("ADES").

- The completion of the merger is subject to customary conditions precedent, including the filing of all required documents with the United States Securities and Exchange Commission, shareholder approval, and court approval of the Scheme arrangement of Arq shareholders.

As part of the completion of the merger, ADES intends to increase the number of its authorized shares of common stock from 100 million to 125 million, subject to shareholder approval at the Special Meeting of Shareholders.

The completion of the merger is subject to approval by holders of shares of ADES common stock during a Special Meeting of Shareholders, date and time to be determined. Additional information regarding the terms of the merger and required shareholder approval will be provided via a preliminary proxy statement, to be filed with the U.S. Securities and Exchange Commission (the "SEC") in the coming weeks. If approved by ADES shareholders, the merger is expected to close during the fourth quarter of 2022 or the first quarter of 2023.

* * *

19. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that ADES's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Registration Statement**

20. On November 4, 2022, ADES and Arq jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished

to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

21. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the financial advisors in their analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Arq which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Arq and ADES prepared certain non-public financial forecasts (the "Arq Projections" and "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

22. For the Arq Projections and the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

23. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

24. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

25. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most

comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for ADES*

26.     With respect to Ducera's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of the Company; (ii) the inputs and assumptions underlying the exit EBITDA multiple range from 4.0x to 5.0x; (iii) the inputs and assumptions underlying the discount rate of 14%; (iv) the Company's estimated weighted average cost of capital; and (v) the net debt of ADES as of December 31, 2022.

27.     With respect to Ducera's *Publicly Traded Company Valuation Analysis*, the Registration Statement fails to disclose the metrics and multiples of the selected comparable companies selected by Ducera for the analysis.

28.     With respect to Ducera's *Precedent Transactions Analysis*, the Registration Statement fails to disclose the metrics and multiples of the selected comparable transactions selected by Ducera for the analysis.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for New ADES*

29.     With respect to Ducera's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values for New ADES; (ii) the inputs and assumptions underlying the exit EBITDA multiple range from 10.0x to 12.0x; (iii) the inputs and assumptions underlying the discount rate of 17%; (iv) New ADES's estimated weighted average cost of capital; (v) the net debt of New ADES as of December 31, 2022; and (vi) the Unlevered Free Cash Flow of New ADES' fiscal years 2023 through 2027.

30. With respect to Ducera's *Publicly Traded Company Valuation Analysis*, the Registration Statement fails to disclose the metrics and multiples of the selected comparable companies selected by Ducera for the analysis.

31. With respect to Ducera's *Precedent Transactions Analysis*, the Registration Statement fails to disclose the metrics and multiples of the selected comparable transactions selected by Ducera for the analysis.

32. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

38. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of ADES within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of ADES, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of ADES, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of ADES, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed

by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

43. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

  B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 14, 2022    **MELWANI & CHAN LLP**

    By: */s/ Gloria Kui Melwani*
      Gloria Kui Melwani
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*